McKinney, J.
delivered the opinion of the court.
On the 8th of February, 1844, the complainant, with one John R. Buford as his surety, executed to the defendant, in the character of administrator of the estate of Gideon Johnson, deceased, three notes, lender seal, for $530, in discharge of what was- claimed to be his indebtedness to the estate of said Gideon Johnson, who was the father of the complainant, and who died in November 1843. This bill is brought to have said notes surrendered up to be cancelled. It charges in substance, that said notes were executed wholly without consideration ; that at the time they were given, he was not indebted to the estate in any amount whatever; but, on the contrary, the estate was largely indebted to him. The bill further charges, that at the time said notes were executed, the complainant was incapable, by reason of the diseased state of mind under which he then labored, of transacting business of any importance ; that for some time preceding the execution of said notes, frequent and pressing appeals were made to him by the defendant and his wife, who is the sister of complainant, and also by some of the other daughters of said Gideon Johnson, on the ground of his supposed liability to the other distributees of said estate; that these solicitations were accompanied with threats of a law suit, in which they represented, that the defendant would be able to recover a large sum,- more than complainant could pay without the sale of most of his estate; that he had great horror of a law suit, in the state of mind in which he then was, and felt willing to make almost any sacrifice rather than be subjected to, what he regarded, a great calamity; that some years previous to this, he had labored under disease which greatly impaired his mental faculties, and that the harassing importunities, and threats of the defendant and others, brought on a return of his disease; that to relieve him *148 from bis distress of mind, his wife made an agreement with the defendant, that he, the complainant, would pay the defendant $500, on condition that he would release complainant from all claims, and would not sue, or cause him to be sued; that his wife made this' agreement with full knowledge that nothing was due from him to the defendant, because she thought relief to his feelings on this subject would restore his mind and health, which she desired at any sacrifice.
The defendant in his answer, does not allege that there was any debt or demand, either legal or equitable, existing in his favor, or in favor of the estate against the complainant at the time said notes were executed; but he states, that they are founded on a good moral consideration, which seems to be this: — About the year 1839,. said Gideon Johnson, who at that time was the owner of a tract of land worth about $1,500, and personal property of the value of $400 or $500, concluded to break up house keeping; that the complainant received the personal property, or the proceeds thereof, and that the land was conveyed to him, on an agreement to support and maintain his father during life; that at the death of said Gideon the proceeds of the little property left by him amounted only to about the sum of $116, and constituted the only fund for .distribution among his children, the complainant and six daughters, who had received but little from their father in his life time. It is not alledged in the answer, that the complainant was guilty of fraud or unfair dealing in acquiring the principal part of his father’s estate; but it is assumed that the great inequality in the disposition thereof; furnished a ground of equitable claim in favor of the other children against the complainant; and upon this consideration said notes are admitted to be founded, and are held, as defendant states,'in trust for the daughters of Gideon Johnson.
Proof has been taken by both parties as .to the state of *149 complainant’s mind at the time said notes were executed. The physician called to visit him on the 26th and 27th days of January preceding, states, that he was then laboring under positive derangement. Other witnesses express the opinion, that the derangement continued to the 8th of February, the date of said notes. The witnesses for defendant entertain a different opinion. The fact that the complainant was deranged on the 26th and 27th days of January, we think is fully made out; but we are not prepared to say that such was his mental condition at the time the notes were executed; and if the case rested on this ground alone, we should perhaps feel constrained to refuse relief. But there is another distinct ground of equitable relief clearly made out in this case. In Story’s Eq. Jur., sec. 234, it is laid down, “that although there is no direct proof that a man is non compos, or delirious, yet if he is of weak understanding, and is harassed and uneasy at the time; or if the deed be executed by him in extremis, it cannot be supposed that he had a mind adequate to the business which he was about, and he might be very easily imposed on;” and in sec. 235, “though a contract made by a man of sound mind, and fair understanding, may not be set aside merely from its being a rash, improvident, or hard bargain, yet if the same contract be made with a person of weak understanding, there does arise a natural inference, that it was obtained by fraud, or circumvention, or undue influence.”
We think it is clearly established in the case, that the complainant, at the the time of executing the notes in question, if not under the influence of partial derangement, was at least of such great weakness of mind as to be incapable of guarding himself against imposition, or of resisting undue influence. The proof shows that he wa's greatly harassed and distressed in mind; that he was pressed most importunately by the defendant and others to execute the notes ; that his fears were *150 appealed to, by threats of a law suit, which might sacrifice his estate; that false representations were made to him respecting his supposed liability to the defendant; and that his wife at length, in the hope- of relieving his mind, joined in urging him to assent to the terms dictated by the plaintiff; and, that under the various influences, he was induced to make himself liable for the payment of $530 to the defendant, and to execute his obligations for the same, wholly unsupported, in our opinion, by any consideration, legal or moral. The inference is irresistible, that the complainant had not mind adequate to the business, and that the execution of said notes was obtained by fraud, and undue influence.
We are of opinion, therefore, that there is no error in the decree of the chancellor, ordering said notes to be surrendered up and cancelled; and we affirm the same, with costs.